Present: All the Justices

ANTHONY CONYERS, JR., COMMISSIONER,
COMMONWEALTH OF VIRGINIA DEPARTMENT OF
SOCIAL SERVICES

OPINION BY
v. Record No. 060232        JUSTICE LAWRENCE L. KOONTZ, JR.
January 12, 2007
MARTIAL ARTS WORLD OF RICHMOND, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Judge

In this appeal, we review the judgment of the circuit court that a particular martial arts instruction program for children, which qualifies as a "child day program" generally subject to licensure by the Virginia Department of Social Services, is exempt from licensure under the "come and go" exemption set forth in Code § 63.2-1715(A)(2). The dispositive issue is the proper interpretation of this statute.

BACKGROUND

Appellant, the Commissioner of Social Services, is responsible for the supervision and management of the Virginia Department of Social Services ("the Department"). Code § 63.2-200. The Commissioner has the duty, among other things, to enforce statutory licensure requirements for any person who operates a "child welfare agency." Code § 63.2-1701(A). A child welfare agency is statutorily defined to include a "child day center." Code § 63.2-100. A child day center is any "child day program offered to (i) two or more children under the age of

13 in a facility that is not the residence of the provider or of any of the children in care or (ii) 13 or more children at any location." A child day program is a "regularly operating service arrangement for children where, during the absence of a parent or guardian, a person or organization has agreed to assume responsibility for supervision, protection, and well-being of a child under the age of 13 for less than a 24-hour period." Id.

The statutory scheme that establishes the licensure requirements also provides a list of exemptions for certain child day programs. Code § 63.2-1715. The exemption that is relevant to this appeal provides that a child day program does not have to be licensed "where, by written policy given to and signed by a parent or guardian, children are free to enter and leave the premises without permission or supervision." Code § 63.2-1715(A)(2).

Appellees Martial Arts World of Richmond, Inc., Martial Arts World of West End, Inc., Martial Arts World of Chester, Inc., and Martial Arts World of Powhatan, Inc. (collectively "Martial Arts World") operate facilities in which they provide martial arts instruction to children as well as adults. Martial Arts World offers two martial arts programs that potentially subject it to licensure as a child day program: an after school

2

program and a "summer camp" for children ages six and older. The general purpose of the after school and summer camp programs is to benefit the children who participate not only by developing physical martial arts skills but also to build character and instill discipline in a highly structured environment.

At all times relevant to this appeal, in order to be exempt from licensure pursuant to the "come and go" exemption of Code § 63.2-1715(A)(2), Martial Arts World provided the parent or guardian of each child participating in the after school and summer camp programs with a form stating that "Martial Arts World is not a licensed child day center." The form further provided that, by signing the form, each parent or guardian "understand[s] that Martial Arts World is a drop-in facility and as required by Virginia law . . . my child is free to enter and leave the premises without permission or supervision of Martial Arts World staff."

The record reflects that, up until 2004, the Department considered Martial Arts World to qualify for the exemption under Code § 63.2-1715(A)(2) and did not require Martial Arts World to be licensed. However, in 2004 personnel of the Department observed the Martial Arts World after school and summer programs and determined that, despite the written policy to the contrary,

3

the children in those programs were not actually free to "come and go" without permission. Accordingly, the Department concluded that Martial Arts World was not exempt from licensure under Code § 63.2-1715(A)(2). The Department notified Martial Arts World that it would need to obtain a license or discontinue operating the after school and summer programs.

As a result, Martial Arts World initiated a lawsuit in the Circuit Court of the City of Richmond against the Commissioner and the Department that proceeded upon an amended bill of complaint. In the amended bill of complaint, Martial Arts World sought a declaratory judgment that it was not a "child day center" or "child day program" subject to licensure or, in the alternative, that Martial Arts World was exempt from licensure under Code § 63.2-1715(A)(2). Martial Arts World also sought injunctive relief to prevent the Department from demanding that Martial Arts World be licensed or face civil and criminal penalties.

The Commissioner[1] subsequently filed separate but materially identical bills of complaint against the four Martial Arts World

---

[1] Maurice Jones, who was the Commissioner when the initial pleadings were filed, resigned during the course of the case and Anthony Conyers, Jr. became the Commissioner. Jones was replaced by Conyers as a party and, for purposes of this appeal, we refer to both Jones and Conyers collectively as "the Commissioner."

4

facilities and the individuals responsible for operating each facility. The Commissioner's bills of complaint alleged that the Department had learned a number of facts indicating that Martial Arts World should not be exempt under Code § 63.2-1715(A)(2) and, thus, that Martial Arts World was required to have a license to operate its after school and summer camp programs. The bills of complaint sought an injunction under Code § 63.2-1711 prohibiting Martial Arts World from operating the after school and summer camp programs without a license.[2]

The actions filed by Martial Arts World and the Commissioner were consolidated by the circuit court.[3] Thereafter, the court held a two-day evidentiary hearing in which the parties presented evidence relating to Martial Arts World's after school and summer camp programs and the authorization of the children enrolled therein to enter and leave the premises of Martial Arts World without permission or

---

[2] Code § 63.2-1711 authorizes the circuit court in the locality where the principal office of a child welfare agency is located to enjoin that child welfare agency from unlawfully operating without a license.

[3] The Commissioner's bills of complaint not filed in the Circuit Court of the City of Richmond were transferred to that court pursuant to motions filed by Martial Arts World in the other circuit courts where the bills of complaint were filed. The Circuit Court of the City of Richmond subsequently entered an order consolidating Martial Arts World's bill of complaint and the four bills of complaint filed by the Commissioner.

supervision.  Following the presentation of the evidence, the parties presented argument that focused on two issues.  The first issue was whether Code § 63.2-1715(A)(2) required a child day program not only to have a written policy that children are free to enter and leave the premises without permission or supervision but also that the agency actually comply with that policy.  The second issue was whether Martial Arts World in fact allowed the children in the after school and summer programs to leave and enter its premises without permission or supervision.

The circuit court ruled that Martial Arts World is a "child day program" as statutorily defined.  The court further ruled that "Martial Arts World's after school program and summer camp comply with § 63.2-1715[(A)](2) as written.  Therefore, Martial Arts World's programs are exempt from licensure."  The court gave the following reasons for its ruling from the bench:

> There are certain aspects of this program as it works, seems to me, [that are] antithetical or opposed to this come and go policy.  As I alluded to earlier, the program itself, the way the program is structured, and some of the ancillary things that the parents are required to do, with the sign up and the listing of authorized persons, seems to me it suggests that that's opposed to [a] come and go policy.  But I think the [c]ourt here has to deal with the statute as . . . written.  And I find that the statute as written—this organization has complied with it.  It's not up to the [c]ourt to graft on the statute more than what the General Assembly has provided . . . .  I think as

6

> written the statute says what it says. There's a
> program whereby written policy given to and signed by
> parents and guardians they're free to leave the
> premises without permission or supervision . . . .
> [T]he statute is what it is, and that's what it reads.
> And I think this organization, these groups here, come
> within it.

The circuit court entered a final order on November 4, 2005, incorporating by reference the reasons stated from the bench. The court further denied injunctive relief to both parties. This appeal followed.

### DISCUSSION

As a threshold matter, we are presented with the remarkable, if not unique, circumstance in which the parties dispute what the circuit court's interpretation of Code § 63.2-1715(A)(2) actually was. The Commissioner's third assignment of error reflects his belief that the circuit court interpreted Code § 63.2-1715(A)(2) such that "a child day program merely needs to have a policy [to be exempt from licensure], but does not have to follow it." The Commissioner asserts that the evidence presented at trial "clearly established that Martial Arts World does not allow children to freely enter and leave the premises without permission [or] supervision," and that the circuit court ruled that Martial Arts World was exempt by virtue of having "nothing more than a permission slip that is signed by

7

the parents" without an expectation that the program actually comply with the policy.

Martial Arts World maintains that the circuit court "concluded that Martial Arts World not only had a policy, but complied with it" and emphasizes that the majority of the evidence presented over the two-day trial pertained to whether it complied with its written policy.  Martial Arts World asserts that for the Commissioner to dispute on appeal "that actual compliance with the exemption was not addressed factually . . . cannot be reconciled with the record."

In determining which party's interpretation of the circuit court's ruling is correct, we turn to the well-established principle that a court speaks only through its written orders. Rose v. Jaques, 268 Va. 137, 147, 597 S.E.2d 64, 70 (2004); Upper Occoquan Sewage Authority v. Blake Construction Co., 266 Va. 582, 588, 587 S.E.2d 721, 724 (2003).  Considering the language used by the circuit court in its final order which incorporated by reference the court's statements from the bench, we agree with the Commissioner that the circuit court did not render a ruling on the evidence as to whether Martial Arts World actually complied with its written "come and go" policy and, instead, based its ruling solely on an interpretation of Code

8

§ 63.2-1715(A)(2) to require only a written policy for an exemption to licensure.

In its statements from the bench, the circuit court did not address the evidence except to note that certain evidence suggested Martial Arts World does not comply with its written "come and go" policy. However, the circuit court stopped short of ruling on the issue of Martial Arts World's compliance with its policy. Rather, using language that was recited verbatim in the final order, the circuit court stated that Martial Arts World complied with Code § 63.2-1715(A)(2) "as written." These statements, while not explicit in their terms, reflect a ruling by the circuit court that the existence of a written "come and go" policy renders a child day program exempt from licensure under Code § 63.2-1715(A)(2) without regard to whether the child day program actually complies with that policy. Martial Arts World's assertion of the fact that the parties went to considerable lengths to produce evidence regarding compliance with the policy does not alter the circuit court's ultimate interpretation of Code § 63.2-1715(A)(2).

Thus, the sole issue to be resolved is whether the circuit court erred in interpreting Code § 63.2-1715(A)(2) to allow a child day program to avoid licensure solely by issuing a written policy that children enrolled in the program are free to enter

9

and leave the premises of the program without permission or supervision, regardless of whether the child day program actually complies with that policy.[4]  In doing so, we note that Martial Arts World does not assign cross-error to the circuit court's ruling that it meets the statutory definition of a "child day program" and, therefore, is required to be licensed by the Commonwealth unless it is exempt from licensure under the statutory exemption under consideration here.  We also note that it is undisputed that the form issued by Martial Arts World indicating that the children in its program are free to enter and leave its premises without permission or supervision constitutes a "written policy" as that term is used in Code § 63.2-1715(A)(2).

Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo.  Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127,

---

[4] The Commissioner made three assignments of error. However, he failed to brief his first assignment of error and, thus, it is waived.  Rule 5:27; Rule 5:17(c); Elliott v. Commonwealth, 267 Va. 396, 422, 593 S.E.2d 270, 286 (2004). Additionally, assignment of error two is insufficient.  It states:  "[t]he Chancellor's finding that Martial Arts World's after school and summer camp programs are in compliance with Virginia Code § 63.2-1715[(A)](2) is plainly wrong and without evidence to support it."  Our rules provide that "[a]n assignment of error which merely states that the judgment or award is contrary to the law and the evidence is not sufficient."  Rule 5:17(c).

129 (2005); <u>Ainslie v. Inman</u>, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). When the language of a statute is unambiguous, we are bound by the plain meaning of that language. <u>Campbell v. Harmon</u>, 271 Va. 590, 597-98, 628 S.E.2d 308, 311-312 (2006); <u>Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv.</u>, 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006). Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. <u>Boynton v. Kilgore</u>, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006); <u>Williams v. Commonwealth</u>, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); <u>Woods v. Mendez</u>, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003). If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute. <u>Garrison v. First Federal Savings & Loan Ass'n.</u>, 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991); <u>McDaniel v. Commonwealth</u>, 199 Va. 287, 294, 99 S.E.2d 623, 629 (1957); <u>Rockingham Co-Operative Farm Bureau, Inc. v. City of Harrisonburg</u>, 171 Va. 339, 344, 198 S.E. 908, 910 (1938).

The language of Code § 63.2-1715(A)(2) provides an exemption to the general requirement that child day programs be licensed by the Commonwealth for a child day program that "<u>by</u>

11

written policy given to and signed by a parent or guardian, children are free to enter and leave the premises without permission or supervision." (Emphasis added.) This language is not ambiguous. This language clearly contemplates the circumstances in which children are in fact free to enter and leave the premises of the child day program without permission or supervision. This language also clearly contemplates that the child day program have a "written policy" which is given to and signed by a parent or guardian to ensure that the parent or guardian is fully aware that the children are, in reality, free to come and go. Accordingly, we conclude that, for the exemption from licensure under Code § 63.2-1715(A)(2) to apply, a child day program must not only have a written policy given to and signed by parents that the children are free to enter and leave the premises without permission or supervision, but that the children must actually be free to enter and leave the premises.

The undeniable purpose behind the General Assembly's requirement that certain child-care facilities or programs be licensed by the Commonwealth is to protect the well-being of the children in those facilities or programs through supervision by the Department. Since protecting children is without question an objective of the utmost importance, we are of opinion that

12

exceptions to licensing requirements should be narrowly construed. Considering Code § 63.2-1715(A)(2) in such a manner, we hold that for this exemption to apply a child day program cannot avoid licensure simply by adopting a written policy concerning a child's ability to "come and go" that it does not in fact follow. The circuit court's interpretation of this statute would allow a child day program to escape licensure simply by issuing a written policy statement that is meaningless for practical purposes; a result that we will not conclude the General Assembly intended.

For these reasons, we hold that the circuit court erred in determining that Martial Arts World was exempt from licensure under Code § 63.2-1715(A)(2) simply by virtue of issuing its written policy. We take this opportunity, however, to clarify that our holding does not require a child day program, in order to be exempt under Code § 63.2-1715(A)(2), to refuse to take basic steps to restrain the movement of children in order to protect their safety and well-being. The fact that a child day program implements basic protective measures that any responsible organization or program must take to protect a child in their care, does not exclude a proper conclusion that a child is actually free to "come and go" without permission or supervision as contemplated by Code § 63.2-1715(A)(2).

13

CONCLUSION

We will reverse the judgment of the circuit court because it erred in its interpretation of Code § 63.2-1715(A)(2). Because our holding requires a determination of whether Martial Arts World actually complied with its written policy that children may enter and leave its premises without permission or supervision in order to determine whether the exemption from licensure under Code § 63.2-1715(A)(2) applies, we will remand the case so that the circuit court can make that determination.

<u>Reversed and remanded</u>.

14