PRESENT: All the Justices

BILLY T. WAKOLE, SR.

OPINION BY
JUSTICE CLEO E. POWELL
v.  Record No. 102176
March 2, 2012

NARMINA BARBER

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

In this appeal, we address whether the circuit court erred in 1) allowing counsel for Narmina Barber, a personal injury plaintiff in an action arising from an automobile accident, to argue in his closing that each item of damage was separate and had a fixed numerical value, and 2) permitting Barber's counsel to enumerate each item of damages to the jury during closing argument.[1]  We conclude that the argument made by Barber for specific amounts for various types of damages did not invade the province of the jury nor did it violate Code § 8.01-379.1.  Therefore, we will hold that the trial court did not err in

---

[1] The defendant driver of the other vehicle, Billy T. Wakole, Sr., also argues that the circuit court erred by allowing Barber's attorney to argue his personal opinions to the jury regarding the amount that ought to be awarded for each item of damages.  On appeal, Wakole specifically challenges Barber's counsel's statement that "[Barber] is the most reasonable woman you could ever meet.  I submit to you that this is a modest sum."  However, Wakole failed to argue to the circuit court that Barber's counsel was injecting his personal opinion into his closing argument and therefore, the circuit court never ruled on this issue.  As such, we will not address this argument as a basis for appeal. Rule 5:25.  However, this type of argument may be interpreted as stating a personal opinion.  We caution against argument that expresses a personal opinion about the justness of a cause, credibility of a witness, or culpability of a civil litigant.

denying Billy T. Wakole, Sr.'s motions to prohibit such argument.

## I. FACTS AND PROCEEDINGS

On November 10, 2006, Barber was a passenger in an automobile driven by her husband when Wakole made a sudden left turn in front of their vehicle hitting the passenger side of the Barber's vehicle. Although Barber felt pain at the time of the accident, she declined to go to the hospital but later sought several types of treatment with limited success for headaches and neck pain.

Prior to the accident, Barber was "always full of energy, ready to work, ready to clean the house, ready to go out and party, just always go, go, go." Since the accident, she has often been irritable because of the pain and the limitations that the pain places on her activities with family and friends. She periodically has had to hire people to assist her with thoroughly cleaning her home. Her friends now describe her as depressed and without energy.

As a result of her injuries, Barber brought this action against Wakole, who admitted liability for the accident but disputed the extent of Barber's damages. At trial, Barber entered two exhibits of her medical expenses – one for $948 and one for $4,173. In her complaint, Barber requested $50,000 in damages.

Prior to closing argument, Wakole objected to any argument by Barber that would amount to using Civil Model Jury Instruction 9.000 as a mathematical formula utilizing each type of damage as a line item. Wakole's counsel argued that this Court's decision in Certified T.V. & Appliance Co, Inc. v. Harrington, 201 Va. 109, 109 S.E.2d 126 (1959), prohibited such an argument because that case held that counsel may not propose a method to the jury by which the jury ought to calculate damages. Counsel did not dispute that Barber put on evidence of pain, suffering, and inconvenience but argued that assigning a monetary value to each category would amount to nothing more than speculation. The court overruled Wakole's objection.

During Barber's closing argument, she presented a chart from which the jury could calculate damages, which she called a formula, and argued for $50,000 in damages, including compensation for medical bills, past inconvenience, "full and fair compensation for the injuries she sustained," future medical expenses, past pain and suffering, and her pain and limitations that she will have for the remainder of her life.[2] Barber argued to the jury that the law recognizes "human losses"

---

[2] Barber's counsel initially sought damages in excess of $50,000, but Wakole objected and argued that Barber could not ask the jury for an amount in excess of the amount she sought in her complaint. The circuit court agreed. Counsel for Wakole made no other objections.

and asserted that three years and nine months after the accident, she still suffered from headaches and neck pain for which medical treatment afforded little relief. She also argued that she has been greatly inconvenienced by this accident in terms of her daily life and her relationships with others. The jury returned a verdict for $30,000 in damages.

## II. ANALYSIS

### CERTIFIED T.V. IS NOT DISPOSITIVE

"[T]he purpose of closing argument is to draw the jury's attention to the body of evidence that has been admitted into the record and to argue reasonable inferences that may be drawn from that evidence." Graham v. Cook, 278 Va. 233, 250, 682 S.E.2d 535, 544 (2009). We have often said that "determinations regarding the propriety of argument by trial counsel are matters left to the sound discretion of the circuit court." Id. at 249, 682 S.E.2d at 544. We will not reverse a circuit court's ruling unless such ruling was an abuse of discretion and the rights of the complaining litigant have been prejudiced. Id.

Here, Wakole argues that the circuit court erred in allowing Barber to use a chart during her closing argument to request specific amounts from the jury for certain categories of damages. To support this argument, Wakole relies upon our holding in Certified T.V.. Such reliance, however, is misplaced.

In Certified T.V., we held that allowing plaintiff's counsel to make an argument to the jury based upon a "daily or other fixed basis" would permit the plaintiff to present that which is not in evidence and invade the province of the jury. 201 Va. at 114-15, 109 S.E.2d at 131.  "Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel." Id. at 115, 109 S.E.2d at 131.  What amounted to putting information not in evidence before the jury and thereby invading its province in Certified T.V. was "the use by plaintiff's counsel of a mathematical formula setting forth on a blackboard the claim of pain, suffering, mental anguish, and the percentage of disability suggested by him on a per diem or other fixed basis . . . ."  Id.  We concluded that doing so was "speculation of counsel unsupported by evidence, amounting to his giv[ing] testimony in his summation argument, and that it was improper and constituted error."  Id. (citations omitted).  The specific argument in Certified T.V. that was objected to and ruled to be inappropriate by this Court was as follows:

> permanent phlebitis $5,475.00, traumatic arthritis at 50 cents – $5,475,00, mental anguish, re: pregnancy, five months – $750.00, seven weeks on crutches at $10.00 daily – $490.00

Id. at 113, 109 S.E.2d at 130.  In passing on the impropriety of the argument, we stated:

The suggested amount for permanent phlebitis is the sum of $5,475.00, and, while the record does not show how counsel arrived at that figure, it can be assumed that it was fixed by calculating so many days of the ailment at 50 cents per day, since the next item listed is traumatic arthritis at 50 cents – $5,475.00. The next items, mental anguish, re: pregnancy, five months – $750.00, seven weeks on crutches at $10.00 per day – $490.00, and inability to wear shoes, dance, etc. – $5,000.00, appear to have been calculated on a basis of a fixed amount to be allowed each day for so many days.

Id. at 114, 109 S.E.2d at 130. The danger against which the Court sought to guard was an argument placed before the jury that was not based on the evidence and further was based on a flawed premise that pain and suffering is constant from individual to individual and the degree of pain is the same daily. Id. at 115, 109 S.E.2d at 131.

These are not the facts of the present case. Here, Barber's counsel presented the jury with a chart detailing various amounts sought for different categories of damages. At one point, counsel argued that Barber hoped to live an additional thirty-five to forty years but did not assign a per diem rate to this expectation. What Barber did was ask for a fixed dollar amount for each category of damages.[3]

---

[3] Contrary to the argument made by the dissent that the court erred in allowing counsel to assign value and to testify in the guise of making argument, counsel was conveying to the jury the values that Barber had placed on her pain and suffering. Indeed, counsel at one point argued that "Barber suggests [$15,000] as full and fair compensation for the injuries she sustained[.]" Because they were the amounts sought

There is no question that a plaintiff is allowed to ask for a total fixed dollar amount for any provable, non-economic damages to include bodily injury, physical pain, mental anguish (past and future), and inconvenience (past and future).  There is no question that the lump sum amount requested, unlike medical bills or lost wages, is based on intangibles for which there is no specific evidence of monetary value in the record.  The only limitations on a request for a lump sum are that the amount be supported by the evidence and be an amount that will fully and fairly compensate the plaintiff for damages suffered as a result of the defendant's negligence.

Tellingly, because a plaintiff can request one lump sum for all of the provable elements of damage combined, if a plaintiff suffered only one non-economic loss, i.e., bodily injury, any amount sued for above the economic loss would be an amount that counsel should be able to request by amount.  Consequently, just as counsel can argue for a total amount requested by the plaintiff, there is no principled reason why a plaintiff should not be able to request a specific amount for each element of damages sought as long as there is evidence in the record to

---

by Barber, the values placed upon the damages as broken down should no more be disallowed as "estimates of counsel", than the total amount requested in the ad damnum and conveyed to the jury during closing argument.

7

support each element of damages claimed and the total requested is no more than the ad damnum.

It has long been recognized that plaintiff is allowed to ask for a "fixed amount" for non-economic loss caused by the defendant's negligence. Today, we hold that, as long as there is evidence to support an award of non-economic damages, plaintiff is allowed to break the lump sum amount into its component parts and argue a "fixed amount" for each element of damages claimed as long as the amount is not based on a per diem or other fixed basis.

Here, because the defendant concedes that there was evidence to support the plaintiff's non-economic damages, we hold that the trial court did not err in allowing Barber to request a fixed amount for each element of damages claimed.[4]

### CODE § 8.01-379.1 DOES NOT PREVENT A PLAINTIFF FROM REQUESTING SPECIFIC AWARDS FOR DIFFERENT CATEGORIES OF DAMAGES WHEN SUCH ARGUMENT IS SUPPORTED BY THE EVIDENCE

Next, Wakole argues that by allowing Barber's counsel to enumerate each item of damages, the trial court violated Code § 8.01-379.1. Essentially, Wakole contends that because the

---

[4] Although Barber's counsel referred to using a formula to calculate damages, this term is misleading. The means by which Barber presented her sought for damages to the jury was not "a per diem or other fixed basis." Certified T.V., 201 Va. at 115, 109 S.E.2d at 131; Reid v. Baumgardner, 217 Va. 769, 772, 232 S.E.2d 778, 780 (1977). It is clear from reading the record that the formula to which counsel referred was derived from 1 Virginia Model Jury Instructions – Civil, No. 9.000.

statute allows the parties to inform the jury of the amount of damages sought, it limits the party to arguing only one total amount.

Issues of statutory interpretation are pure questions of law that we review de novo.  Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language.  Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity."  Id. (internal citations omitted).

The Code does address what a jury may be told about the amount a plaintiff sues for:

> Notwithstanding any other provision of law, any party in any civil action may inform the jury of the amount of damages sought by the plaintiff in the opening statement or closing argument, or both. The plaintiff may request an amount which is less than the ad damnum in the motion for judgment.

Code § 8.01-379.1.  Nothing in this provision states that when addressing the jury regarding the total amount sought, the plaintiff may only do so in terms of one lump sum.  "Courts cannot 'add language to the statute the General Assembly has not seen fit to include.' "  Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) (quoting Holsapple v.

9

Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003)). To take Wakole's argument to its logical conclusion, a plaintiff would be precluded from presenting separate amounts for quantifiable losses like medical expenses and lost wages as well as those from non-economic losses, e.g., pain and suffering. This interpretation would read into the statute language that is not there. Thus, we hold that the trial court did not err in allowing Barber's argument.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of trial court.

Affirmed.

JUSTICE McCLANAHAN, dissenting.

The dangers against which this Court sought to guard in Certified T.V. were allowing counsel to use closing argument to introduce evidence that was not before the jury and allowing counsel to invade the province of the jury by suggesting a calculation for damages. The circuit court allowed both in permitting Barber's counsel to introduce estimates of value for each element of intangible damages and place those values into what counsel referred to as "the formula" given by the court. In concluding that Certified T.V. is not dispositive, the majority ignores the ratio decidendi for the Court's holding.

10

Prior to closing arguments, Wakole objected to the use of a formula with fixed values for elements of pain, injuries, and inconvenience. As Wakole explained to the circuit court, Barber's counsel planned to use

> the [model] damages instruction 9.00 and take each factor which the jury is instructed to consider and set it up in a mathematical equation as individual line items.
>
> For instance, a line item for pain and suffering, a line item for inconvenience, and so forth. And what I understand they intend do in their closing is assign a value to each of those factors, and then at the bottom come up with a sum, as if they have added them all together in a mathematical equation.

Wakole asserted such argument was improper since it would "suggest a method to the jury as to how they are to go about coming up with a number" and because "the numbers that are assigned to each individual factor are entirely arbitrary." Overruling Wakole's objection, the circuit court agreed with Barber that Certified T.V. only prohibits a "per diem argument."

During closing argument, Barber's counsel utilized a poster board containing a chart that counsel represented as the law the judge "just read to you." Telling the jury that "[t]his is the formula," counsel displayed a chart containing an itemization of intangible damages that included blank lines for past inconvenience, future inconvenience, injuries, past pain and suffering, and future pain and suffering. Counsel proceeded to complete the chart with a black marker by assigning a numerical

11

value to each item.  Counsel itemized the following elements of intangible damages: past inconvenience from November 2006 through the date of trial - $5,000; future inconvenience - $2,000; injuries and effect on health - $15,000;[1] past pain from November 2006 or "three years and nine months" - $20,000; future pain - $25,000.[2]  Counsel argued, "If you add those up, it would be pretty reasonable."

By allowing counsel to introduce values representing each element of intangible damages into a calculation Barber represented as "the formula" based on the instruction given to the jury, the circuit court permitted Barber's counsel "to invade the province of the jury and to get before it what does not appear in the evidence."  Certified T.V. & Appliance Co., Inc. v. Harrington, 201 Va. 109, 115, 109 S.E.2d 126, 131 (1959).  The values placed upon the elements of intangible damages were "estimates of counsel" that "instill[ed] in the minds of the jurors impressions not founded on the evidence." Id.  In fact, "an expert witness would not be permitted to

---

[1] In discussing injuries and effect on health, counsel told the jury that "the law doesn't break that out for some reason" but the judge "instructed you on it" and "that's the law in Virginia."

[2] Because the numerical values assigned by Barber's counsel, added together, exceeded the amount sought in Barber's complaint, Wakole objected.  After the circuit court sustained the objection, Barber's counsel told the jury that "if you add those up, it comes right over $50,000" but "[a]ll we are asking for today is $50,000."

testify as to the market value of pain and suffering."  Id.
Thus, counsel's use of these fixed values was "speculation" that
was "unsupported by evidence, amounting to his giv[ing]
testimony in his summation argument."  Id.  Although wide
latitude is generally given by the court during closing
argument, "[c]ounsel has no right to testify in the guise of
making argument, nor to assume the existence of evidence that
has not been presented."  Graham v. Cook, 278 Va. 233, 250, 682
S.E.2d 535, 544 (2009).[3]  The circuit court's error in allowing

---

[3] I disagree with the majority that Wakole made any
concession that would permit Barber's counsel to introduce into
his argument estimates of value as to each item of intangible
damages.  The majority concludes that "because the defendant
concedes that there was evidence to support plaintiff's non-
economic damages, we hold that the trial court did not err in
allowing Barber to request a fixed amount for each element of
damages claimed."  That Wakole acknowledged Barber introduced
evidence to support her claim of pain, suffering, and
inconvenience is beside the point since Wakole did not contend
the jury instruction including these items was improper.
Rather, Wakole argued there was no evidence to support the
estimates of value given to these items by Barber's counsel:

> I do not dispute that the plaintiff has put on
> evidence of pain, and suffering, and inconvenience.
> But they have no evidence whatsoever to suggest that
> those intangible things – nor can they have any
> evidence that those intangible things have a specific
> value.
>     And if they offer a value, an arbitrary value,
> they are invading the province of the jury, who has
> the sole responsibility for determining the amount of
> the verdict.

Wakole's argument did not constitute a concession that
would open the door for allowing counsel to introduce, in

13

counsel to assign values to the elements of damages was compounded in allowing counsel to insert these values into a calculation to be used by the jury in arriving at Barber's damages. "[T]he use by plaintiff's counsel of a mathematical formula" setting forth the claim of intangible damages on any "fixed basis" is improper. Certified T.V., 201 Va. at 115, 109 S.E.2d at 131. "Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel." Id. [4]

---

his closing argument, evidence of the values assigned to these elements of damage.

[4] Because Code § 8.01-379.1 permits a party to "inform the jury of the amount of damages sought by the plaintiff," the majority reasons "there is no principled reason why a plaintiff should not be able to request a specific amount for each element of damages sought." I cannot accept this expansion of the plain language of the statute, nor can I accept the proposition that by making a "request" for each element of intangible damages, counsel's assignment of value to each such element is transformed from impermissible testimony into permissible argument. Informing the jury of the amount sought in plaintiff's ad damnum is not the same as allowing counsel to introduce evidence as to the value of individual elements of intangible damages in his closing argument. While the jury may be told of the amount plaintiff seeks to recover, it should not be told by counsel how to calculate this total or what figures to use in its calculation. "[T]here is no fixed rule or yardstick by which to measure with mathematical precision the definite amount of damages for physical pain, suffering and mental anguish endured in personal injury cases," so it must remain "within the sound discretion of the jury to determine from the evidence what is fair and reasonable compensation." Certified T.V., 201 Va. at 114, 109 S.E.2d at 130. The fact that, in some cases, the jury can deduce for itself the value plaintiff assigns to a claim for intangible damages solely from the amount of damages sought without the necessity of counsel

In my view, allowing Barber's counsel to introduce, in his closing argument, values for each of the elements of past inconvenience, future inconvenience, injuries, past pain, and future pain and incorporate them into a formula given to the jury was patently improper and constituted error.

---

supplying that value to the jury is not justification for allowing counsel to supply values for each element of intangible damages when no such deduction can be made.