PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Russell and Millette, S.JJ.

CITY OF CHARLOTTESVILLE

v. Record No. 210414

REGULUS BOOKS, LLC

OPINION BY
SENIOR JUSTICE LEROY F. MILLETTE, JR.
June 9, 2022

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Claude V. Worrell, Jr., Judge

This case involves four issues. First, whether a freelance writer's business provides a service as defined by a business license tax ordinance. Second, whether the freelance writer's business falls under the ordinance's catchall provision. Third, if the ordinance's catchall provision does cover the freelance writer's business, whether the ordinance is unconstitutional as applied to the freelance writer because it is vague. Finally, whether the costs of litigation were properly awarded.

For the reasons stated below, we conclude the freelance writer's business does not provide a service. We further conclude the freelance writer's business is not covered by the ordinance's catchall provision, and therefore do not reach the question of whether the ordinance is unconstitutionally vague as applied to the freelance writer. Because we find the freelance writer's business is not covered by the ordinance, we uphold the circuit court's decision to order the city to refund the freelance writer his tax payments. As to the issue of litigation costs, we find the circuit court erred by awarding costs not essential for the prosecution of the suit and therefore reverse and remand the case to the circuit court to deduct such costs from its award.

## I.   BACKGROUND

Regulus Books, LLC ("Regulus") is a limited liability company solely owned by Corban Addison Klug ("Klug"); Regulus is the holding company for all the rights, transactions, and income related to Klug's literary works. Klug, who is a graduate of the University of Virginia School of Law, has published several internationally-received legal fiction novels focusing on international human rights. Klug is also working on other as-yet unpublished fiction and non-fiction projects. Regulus has entered into several contracts that grant various publishers the license to produce, publish, distribute, and sell specific works by Klug, and Regulus has received advance payments on Klug's behalf for at least some of his uncompleted projects.

In 2018, Klug filed a Virginia income tax return, attaching thereto a Schedule C to indicate that he derived business income in the City of Charlottesville ("City"). This prompted the City to check its records to confirm whether Klug obtained a business license for his business; the City could not locate a business license issued to Klug or to Regulus. As such, the City wrote Klug to inform him that the Code of the City of Charlottesville ("City Code") "require[s] those engaging in a business, trade, profession, occupation or calling" within the City to obtain a business license. Persons and entities possessing a business license are subject to City Code Section 14 ("Ordinance"), which outlines the City's business, professional, and occupation license ("BPOL") tax ordinance and provides:

> Except as otherwise provided herein, there shall be assessed and collected by the commissioner a license tax, at the rates and/or in the amounts specified herein following, with respect to each business for which a license is required by this chapter, except that no license tax shall be assessed and collected from any person whose gross receipts from a business subject to licensure are one hundred thousand dollars ($100,000.00) or less.

(JA 98, 269; City Code § 14-15(a)). As such, the City requested information about Klug's business as well as his income therefrom for the tax years 2015 up to 2018.

Klug responded with a letter, asserting that the Ordinance does not apply to him because he "offer[s] no goods or services to the public[,]" has "no physical storefront or shingle[,]" "do[es] not advertise[,]" has no employees, has no inventory, and offers a "product" that is intangible intellectual property. Alternatively, Klug asserted that if the City insisted that the Ordinance applies to him, then it should explain how it proposed to classify him for purpose of the business license tax. He stated that the Ordinance did not identify freelance authors in its coverage, and he explained that he cannot be classified as a professional because he does not offer knowledge-based services. Klug indicated that the classification "book publisher" appeared to be the closest classification for his type of work—but he reiterated he is an author, not a publisher offering goods and services to the public.

The City replied that "[i]n general, any sort of self-employed endeavor, which produces income, requires obtaining a business license. Further, the Tax Commissioner for the Commonwealth of Virginia opined in Public Document 04-137 that an author is subject to licensure and payment of the BPOL tax." The City explained that a business is defined as

> a course of dealing which requires the time, attention and labor of the person so engaged for the purpose of earning a livelihood or profit. It implies a continuous and regular course of dealing, rather than an irregular or isolated transaction. . . . The following activities shall create a rebuttable presumption that a person is engaged in a business: (i) advertising or otherwise holding oneself out to the public as engaged in a particular business or (ii) **filing tax returns, schedules and documents that are required only of persons engaged in a trade or business**.

(emphasis supplied in the City's letter reply); City Code § 14.2). The City concluded that Klug's writing activity is subject to the business license requirement and that "[e]ntities such as [Klug's] would typically be classified as a 'miscellaneous business/personal service' in [the City's] tax system[.]"

3

The City assessed a business license tax on Regulus' income from Klug's writing activity for the tax years 2015 to 2018; the total assessment was $2,177.22. Regulus did not immediately comply with payment, but after being assessed a penalty and interest for its delinquency, Regulus paid the amount of $2,461.23 under protest. When the Commissioner sent an assessment for 2019, however, Regulus refused to pay.

Instead, Regulus filed a complaint and application for relief from the assessment in the circuit court. Regulus argued that the Ordinance is unconstitutionally vague because it contains a catchall provision covering repair services, business services, and personal services, but it does not define those terms and its definition for the separate terms of "business" and "service" do not assist reasonable persons in determining whether they will be taxed. Regulus averred that the Ordinance gave the City "unconstrained discretion to decide who must pay." As such, Regulus sought a refund of its payment for tax, penalties, and interest, as well as a declaration that the Ordinance is unconstitutional.

In response, the City filed a demurrer, which the circuit court overruled. The City thereafter filed an answer and a motion for summary judgment. The City contended that the Ordinance's broad definition of the terms "business" and "service" make it clear and unambiguous that Regulus is required to apply for a business license. The City added that the regulations of the Virginia Department of Taxation ("Department"), which are contained in the Virginia Administrative Code, omit the definitions of the terms "repair service," "personal service," and "business service" because those terms apply to all services not classified as financial, real estate, or professional—thereby creating a catchall subclassification that is required to be broadly construed. The City pointed out that the Ordinance also contains a catchall subclassification. Specifically, City Code § 14-19(i)(12) taxes "[a]ny other repair,

4

personal or business service not specifically included in any other subclassification" at a rate of $0.36 per $100. The City argued that Regulus' services "clearly fall into the catchall category."

Regulus also filed a motion for summary judgment arguing that the Ordinance is not clear and unambiguous either as to the subject of the tax or the amount of the tax, and as such it is unconstitutionally vague per this Court's precedent.

At the hearing on the cross-motions for summary judgment, the City argued that the Ordinance is not void for vagueness simply because a person is "not able to figure out what [he] ha[s] to pay" and asserted that Regulus' assertions did not overcome the Ordinance's presumption of constitutionality. The circuit court took under advisement Regulus' claim as to vagueness of the Ordinance.

The circuit court issued a letter opinion granting Regulus' vagueness challenge. The circuit court observed that a statute's vagueness is evaluated by asking whether it (1) gives persons of ordinary intelligence a reasonable opportunity to know what is prohibited, so that they may act accordingly, and (2) provides explicit standards to those in charge of its application. The circuit court disagreed that Regulus provided a service to Klug's publishers. It also disagreed that Regulus' business is covered by the Ordinance because (1) the Ordinance does not include authors and holders of their works from its listing of eight classes of businesses and specific identification of over 130 professions, and (2) placing Regulus' activity under the Ordinance's catchall provision was "forced, strained, or contrary to reason." The circuit court reasoned that per this Court's precedent, the Ordinance is vague because it is "[t]he imposition of a license tax on any unnamed business [that] rests solely in the hands of the commissioner of [] revenue." The circuit court concluded that Regulus' business cannot be taxed under an ordinance that is unconstitutionally vague as to Regulus.

5

The circuit court incorporated its letter opinion in its final order, granting Regulus' motion for summary judgment and denying the City's motion for summary judgment as to Regulus' vagueness claim. The circuit court ordered the City to refund Regulus in the amount of $2,461.23 and further ordered payment of costs in the amount of $767.20. The amount of costs awarded was supported by an itemized list, which included the cost of filing, process service fees, transcript fees, transcript shipping fees, pro hac vice admission fees, and fees for case file copy requests.

The City subsequently appealed the circuit court's decision to this Court, and we granted the appeal. In its first assignment of error, the City asserts that the circuit court erred in finding the Ordinance was unconstitutionally vague. In its second assignment of error, it contends the circuit court erred in determining that Regulus produces books and therefore did not provide a service. The City further claims the circuit court erred in finding Regulus does not fall under the Ordinance's catchall provision in its third assignment of error. Lastly, the City asserts in its fourth assignment of error that the circuit court erred in awarding Regulus transcript fees, transcript shipping fees, pro hac vice admission fees, and fees for case file copy requests.

## II. ANALYSIS

### A. *The Ordinance's Application to Regulus*

Regulus neither provides a service under the Ordinance, nor falls under the Ordinance's catchall provision for "repair, personal or business service[.]" Questions of statutory interpretation are pure questions of law that this Court reviews de novo. *City of Charlottesville v. Payne*, 299 Va. 515, 527 (2021). Statutes imposing taxes are generally construed against the Commonwealth and in favor of the taxpayer. *Kohl's Department Stores, Inc. v. Virginia Department of Taxation*, 295 Va. 177, 187 (2018).

6

The City concluded that the catchall provision for "repair, personal or business service" applied to Regulus and thus obligated it to obtain a business license because it performed "miscellaneous business/personal service[s.]" City Code § 14-19(i)(12). The Ordinance defines services as "services purchased by a customer which do not have physical characteristics, or which are not goods, wares, or merchandise." City Code § 14-2. Black's Law Dictionary defines service as "[l]abor performed in the interest or under the direction of others;" it is "the performance of some useful act or series of acts for the benefit of another, usu[ally] for a fee," and "denotes an intangible commodity in the form of human effort, such as labor, skill, or advice." Black's Law Dictionary 1643 (11th ed. 2019). Service is also commonly defined as "useful labor that does not produce a tangible commodity." Webster's Third New International Dictionary 2075 (1993).

Neither party contests that Regulus was conducting business under the Ordinance. However, while the Ordinance does not define "business service," Regulus's commercial activity cannot constitute a "business service" because it does not fall under the more general term of "service," as defined by the Ordinance or in accordance with the word's ordinary meaning. Klug writes literary manuscripts and Regulus operates as the holding company for all the rights, transactions, and income related to his literary works. Klug, through Regulus, has entered into contracts with publishers, granting them the license to produce, publish, distribute, and sell his works. Regulus has even received advance payments on behalf of Klug for some incomplete projects. Writing a literary work then licensing that work to a publisher as Klug does through Regulus is not performing a service. Regulus' publishers do not pay it any kind of fee for service but rather pay Regulus an advance against royalties that will accrue from book sales. As Regulus asserts, the publishers more accurately fit the Ordinance's definition of a service than

7

Regulus. Accordingly, Regulus does not fit within the Ordinance's definition of service because it does not provide a "service[] purchased by a customer." City Code § 14-2.

Additionally, Regulus produces written manuscripts that are later sold as books that are goods with physical characteristics. Therefore, it fails to fit the Ordinance, Black's Law Dictionary, and Webster's Third New International Dictionary's definitions of a "service" as not having a physical characteristic or not producing a tangible commodity. Even if one were to view Regulus as providing the publishers with the right to publish Klug's works, thereby providing the publishers an intangible commodity, the right to publish does not fit the ordinary meaning of service as it does not take "the form of human effort, such as labor, skill, or advice." Black's Law Dictionary 1643 (11th ed. 2019).

Here, the circuit court ruled in favor of Regulus, finding that the Ordinance was unconstitutionally vague as applied to Regulus. This Court does "not hesitate, in a proper case, where the correct conclusion has been reached but the wrong [or a different] reason given, to sustain the result and assign the right ground." *Taylor v. Northam*, 300 Va. 230, 251 (2021) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)). This Court is entitled to affirm on alternate grounds if the record supports such grounds. *City of Charlottesville v. Sclafani*, 300 Va. 212, 222 (2021). Therefore, this Court may affirm the circuit court's decision to award judgment in favor of Regulus and to order the City to refund Regulus the amount it paid under the City's tax assessment upon the grounds that the Ordinance does not apply to Regulus.

Regulus does not provide a service under the Ordinance and does not fall under the Ordinance's catchall provision. Accordingly, we affirm the circuit court's judgment.

8

*B. The Circuit Court's Award of Costs*

The circuit court erred in awarding Regulus certain litigation costs. A circuit court's award of costs is reviewed under an abuse of discretion standard. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 429 (2012).

Code § 17.1-601 provides that generally "the party for whom final judgment is given in an action or motion shall recover his costs against the opposite party." However, the costs contemplated by Code § 17.1-601 only include those "essential for prosecution of the suit, such as filing fees or charges for service of process." *Chacey v. Garvey*, 291 Va. 1, 10 (2015). This Court elaborated in *Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106 (1998), that "expert witness fees, and expenses for express mail service, messengers, meals, law clerk 'temporaries,' computer-based legal research, 'library research,' photocopies, parking, taxicabs, telephone calls, and transcripts" were not essential for the prosecution of a suit and thus not recoverable under Code § 17.1-601. *Id.* at 126. Like the fees in *Advanced Marine Enterprises*, Regulus's transcript fees, transcript shipping fees, pro hac vice admission fees, and fees for case file copy requests were not essential for the prosecution of the suit. Therefore, Regulus may not recover these fees under Code § 17.1-601.

## III. CONCLUSION

For the foregoing reasons we find no error in the circuit court's judgment ordering the City to refund Regulus its tax payments. As to the circuit court's award of litigation costs, we find the circuit court erred and therefore reverse and remand the case to the circuit court solely to modify its award of costs.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

9